IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LYNNE C. QUIGLEY, et al.

v.                      :   Civil Action No. DKC 11-3223

UNITED STATES OF AMERICA, et al.

**MEMORANDUM OPINION**

Presently pending and ready for review in this consolidated tort action are three motions to dismiss filed by Defendant Washington Suburban Sanitary Commission ("WSSC"). (ECF Nos. 13, 22, 27). The issues have been briefed, and the court now rules, no hearing being necessary. Local Rule 105.6. For the following reasons, the motions to dismiss will be granted in part and denied in part.

**I.   Background**

Three cases are consolidated in this action: *Quigley v. United States*, No. DKC 11-3223; *Ochoa v. United States*, No. DKC 11-3224; and *Barbosa v. United States*, No. DKC 11-3225. The allegations contained in the complaints for the three cases are largely identical and describe the same accident. (*See* ECF Nos. 1, 21, 26). The following allegations are taken from the original complaint filed by Plaintiffs Lynne C. Quigley, Miles

C. Quigley, and the estate of Joseph Quigley (ECF No. 1), unless otherwise indicated.

**A.   Factual Background**

At some point during the overnight hours of January 19, 2009, a water main maintained by WSSC burst under Ridge Drive near the intersection of 64th Street in the Bethesda area of Montgomery County, Maryland.   After the main ruptured, WSSC increased the water pressure, which amplified the flow of water.[1] Water from the main escaped into the street, where it collected and flowed into a storm drain at the intersection of Ridge Drive and 64th Street.   The storm drain was maintained by Defendant Montgomery County ("the County").   Due to a breach in the storm drain, the water made its way down a hillside onto the adjacent Clara Barton Parkway ("the Parkway"), a limited access urban freeway maintained by Defendant United States through its Department of the Interior and National Park Service.

On January 20, 2009, the temperature in the vicinity was below freezing.   As a result, the water from the burst main that had collected on the Parkway froze into ice.   The ice covered both westbound lanes of the Parkway for approximately 200 yards.

---

[1] It is WSSC's protocol that upon learning of a broken main, WSSC increases the water pressure to prevent water from backing up within its system.   (ECF No. 21 ¶ 26; ECF No. 26 ¶ 26).

There was no other appreciable rain, sleet, snow, or other precipitation in the area.

Around 5:24 a.m. that day, decedent Joseph Quigley was driving eastbound on the Parkway. At about the same time, Defendant Marcelo Pepe was driving westbound. Plaintiff Adriana Ochoa and Plaintiff Pollyana Barbosa were passengers in Mr. Pepe's vehicle. (ECF No. 21, at 3; ECF No. 26, at 3). Mr. Pepe encountered the ice caused by the burst main, lost control of his vehicle, crossed the median into the eastbound lanes, and collided with Mr. Quigley's vehicle. Mr. Quigley sustained injuries from which he eventually died. In Mr. Pepe's vehicle, Ms. Ochoa sustained injuries. (ECF No. 21 ¶ 32). Ms. Barbosa, who was originally in the back seat, was ejected from the vehicle and landed on top of the burning exhaust system of the vehicle, all of which caused injuries and first-, second-, and third-degree burns. (ECF No. 26 ¶¶ 32, 35).

**B.   Procedural Background**

On November 11, 2011, Plaintiffs Lynne C. Quigley and Miles C. Quigley, individually and as personal representatives of the estate of Joseph Quigley ("the Quigley Plaintiffs"), brought a wrongful death and survival action against Defendants in this

court.[2]  Their original complaint contains six counts:  (1) strict liability against WSSC; (2) negligence against WSSC and a Doe Defendant employee of WSSC; (3) strict liability against the County; (4) negligence against the County and a Doe Defendant employee of the County; (5) negligence against the United States; and (6) negligence against Mr. Pepe.[3]  Separately, Ms. Ochoa and Ms. Barbosa filed complaints asserting identical counts.

On December 13, 2011, WSSC filed a motion to dismiss the claims asserted against it in each of the three actions.  (ECF Nos. 13, 22, 27).[4]  The Quigley Plaintiffs, Ms. Ochoa, and Ms. Barbosa, respectively, opposed WSSC's motions.  (ECF Nos. 19, 25, 34).  The three cases were consolidated for all purposes by court order on January 4, 2012.  (ECF No. 20).  On January 18,

---

[2] Federal jurisdiction is predicated on the Federal Tort Claims Act claim against the United States, with supplemental jurisdiction as the basis for all other claims.

[3] On January 10, 2012, the parties entered into a stipulation in which the County and WSSC agreed that to the extent any of their employees were found responsible for the injuries in this matter, the County and WSSC, respectively, would "stand in the shoes of said employee(s), litigate, and be financially responsible for any judgment that may be entered against any employee(s)."  (ECF No. 30).

[4] The County filed responses to WSSC's motions in order to clarify that WSSC's arguments were based on erroneous allegations regarding the storm drain.  (ECF Nos. 18, 24, 29).

2012, WSSC filed one omnibus reply to all three oppositions.
(ECF No. 31).[5]

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule
12(b)(6) is to test the sufficiency of the complaint.  *Presley
v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A
plaintiff's complaint need only satisfy the standard of Rule
8(a), which requires a "short and plain statement of the claim
showing that the pleader is entitled to relief."  Fed.R.Civ.P.
8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than
a blanket assertion, of entitlement to relief."  *Bell Atl. Corp.
v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must
consist of more than "a formulaic recitation of the elements of
a cause of action" or "naked assertion[s] devoid of further
factual enhancement."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949
(2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded
allegations in a complaint as true, *Albright v. Oliver*, 510 U.S.
266, 268 (1994), and must construe all factual allegations in

---

[5] On February 27, 2012, the court granted the Quigley
Plaintiffs' consent motion for leave to file an amended
complaint.  (ECF No. 43).  The amended complaint adds a new
Defendant, United Services Automobile Association Casualty
Insurance Co., via a seventh count.  (ECF No. 44).  The original
claims otherwise remain the same, and Defendants are not
required to refile responses.

the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).   In evaluating the complaint, the court need not accept unsupported legal allegations.   *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).   Nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).   Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**III. Analysis**

   WSSC moves to dismiss the three complaints on largely identical bases.   As to Ms. Barbosa's claims, however, WSSC advances one additional argument regarding the sufficiency of her notice to WSSC under the Local Government Tort Claims Act

("LGTCA"). That argument will be addressed first, and then WSSC's substantive arguments as to Plaintiffs' claims will be addressed.

### A. Ms. Barbosa's Notice to WSSC

WSSC seeks dismissal of Ms. Barbosa's claims against it on the ground that she failed to comply with the notice requirements of the LGTCA. (ECF No. 27-1, at 11-12). The Barbosa complaint recites that:

> Notice of the Plaintiff's tort claims against WSSC was duly presented at the same time as notice was presented by a passenger in Marcello Lucio Pepe's car, Adriana Ochoa on July 9, 2009. A follow up notice was provided by letter dated October 2, 2009. WSSC denied the claims as untimely despite having actual notice of the claim filed by other victims of the accident.[1]

_____
[1] On or before July 9, 2009, within 180 days of January 20, 2009, notice was given pursuant to § 5-304 of the Cts. & Jud. Proc. Article by Adriana Ochoa, the Estate of Joseph Quigley and Lynne and Miles Quigley, and Luis Asuncion Vera, to Montgomery County and WSSC. On July 9, 2009, current counsel was retained by Pollyana Barbosa, who at the time was unaware that a water meter owned by WSSC had broken resulting in water flooding the Clara Barton Parkway where it formed ice. Immediately after receiving the police report, which disclosed Montgomery County and WSSC's negligence, notice of her claim was sent by Pollyana Barbosa on October 2, 2009 pursuant to § 5-304 of the Cts. & Jud. Proc. Article. Because all of the other victims of the accident had already put WSSC and Montgomery County on notice, and Montgomery County and WSSC were in possession of the police report listing

> Pollyana Barbosa as a victim, WSSC and
> Montgomery County cannot show they were
> prejudiced by any technical defect in
> Pollyana Barbosa's notice as required by §
> 5-304(c) in order for them to deny her
> claim.

(ECF No. 26 ¶ 11).

Ms. Barbosa argues that, although she may not have strictly complied with the notice statute, she substantially complied with it. (ECF No. 34, at 19-21). Alternatively, Ms. Barbosa contends that the notice requirement should be waived for good cause and lack of prejudice to WSSC. (*Id.* at 21-24).

### 1.    The LGTCA and Substantial Compliance

The LGTCA provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." Md. Code Ann., Cts. & Jud. Proc. § 5-304(b). For WSSC, which is listed as a "local government" in section 5-301(d)(7), "the notice shall be given in person or by certified mail . . . by the claimant or the representative of the claimant, to . . . corporate authorities." *Id.* § 5-304(c). "[T]he LGTCA creates a procedural obligation that a plaintiff must meet in filing a tort action. A plaintiff must . . . plead . . . satisfaction [of the notice requirement] in his/her complaint." *Hansen v. City of Laurel, Md.*, 420 Md. 670, 694 (2011).

The purpose of the notice requirement is

> to protect the municipalities and counties of the State from meretricious claimants and exaggerated claims by providing a mechanism whereby the municipality or county would be apprised of its possible liability at a time when it could conduct its own investigation, *i.e.*, while the evidence was still fresh and the recollection of the witnesses was undiminished by time, "sufficient to ascertain the character and extent of the injury and its responsibility in connection with it."

*Bartens v. Mayor of Balt.*, 293 Md. 620, 626 (1982) (quoting *Jackson v. Bd. of Cnty. Comm'rs*, 233 Md. 164, 167 (1963)).  In light of this purpose, the Court of Appeals of Maryland has held that "strict compliance with the notice provisions of the LGTCA is not always required; substantial compliance may suffice." *Moore v. Norouzi*, 371 Md. 154, 171 (2002); *accord Faulk v. Ewing*, 371 Md. 284, 298 (2002).  In *Faulk*, the Court of Appeals explained:

> Where the purpose of the notice requirements is fulfilled, but not necessarily in a manner technically compliant with all of the terms of the statute, this Court has found such substantial compliance to satisfy the statute.  Substantial compliance requires some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision.  In *Condon v. University of Maryland*, 332 Md. 481 (1993), we said that substantial compliance is "such communication that provides . . . 'requisite and timely notice of facts and circumstances giving rise to the claim.'"  *Id.* at 496

> (quoting *Conaway v. State*, 90 Md.App. 234,
> 246 (1992)).

371 Md. at 299 (internal quotations and citations omitted).
Substantial compliance, however, requires some effort on the
claimant's part to provide notice.   In the analogous context of
the Maryland Tort Claims Act, the Court of Appeals stated:

> As to substantial compliance itself, even
> assuming *arguendo* that it would suffice,
> there was no substantial compliance here.
> The plaintiffs have not pointed to any facts
> which would support their claim of
> substantial compliance.   The plaintiffs did
> not undertake in any way to provide the
> State with notice of their claim; they rely
> solely on the State's own efforts in
> acquiring information about the incident.
> As we stated in *Simpson [v. Moore]*, 323 Md.
> [215,] 228, 592 A.2d [1090,] 1096 [(1991)],
> "[t]he doctrine of substantial compliance
> has no application to an outright failure to
> comply."   Even if the doctrine of
> substantial compliance is applicable to the
> 180-day claim filing requirement, an issue
> which we do not decide today, substantial
> compliance requires more than a mere lack of
> prejudice to the State.

*Johnson v. Md. State Police*, 331 Md. 285, 291-92 (1993).

Here, Ms. Barbosa asserts that any of the notice letters
sent by her co-plaintiffs fulfilled her notice obligation under
the statute.   WSSC primarily challenges these notice letters on

the ground that they did not come from Ms. Barbosa or her

representative.[6]

Although strict compliance with the statute may not always

be required, it does not appear that any Maryland court has yet

relaxed the basic requirement that notice be delivered "by the

claimant or the representative of the claimant" or that the

notice specifically refer to the claim of the Plaintiff.   Ms.

Barbosa has not alleged any sort of legal relationship between

herself and her co-plaintiffs that would overcome this critical

hurdle.   It is required by the law that *she or her agent* must

take an affirmative step towards preserving her rights under the

statute.   *See Faulk*, 371 Md. at 299 ("Substantial compliance

requires *some* effort to provide the requisite notice." (emphasis

added)).   Accordingly, Ms. Barbosa's attempt to piggyback on the

_____

[6] Although WSSC technically only contests Ms. Barbosa's
reliance on Ms. Ochoa's notice letter, its arguments will be
construed as applying to the Quigley Plaintiffs' notice letter
as well because there is some minor confusion about the notice
at issue.   In her complaint, Ms. Barbosa alleges:   "Notice . . .
was duly presented at the same time as notice was presented by a
passenger in Marcello Lucio Pepe's car, Adriana Ochoa on July 9,
2009."   (ECF No. 26 ¶ 11).   Ms. Ochoa actually sent her notice
to WSSC on May 19, 2009.   (ECF No. 27-2).   It was the Quigley
Plaintiffs who sent notice to WSSC on July 9, 2009.   (ECF No.
34-2, at 4-5).
     Separately, these letters were attached to WSSC's motion
and Ms. Barbosa's opposition, respectively.   Because they are
integral to the complaint and their authenticity is not
challenged, they may be relied upon in resolving the pending
motion to dismiss without converting it to a motion for summary
judgment.   *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222-23
(4th Cir. 2009).

timely efforts of others is insufficient to find compliance, substantial or otherwise, with the LGTCA.

### 2.  Good Cause

The notice requirement of the LGTCA may be waived for good cause and lack of prejudice to the defendant.  Md. Code Ann., Cts. & Jud. Proc. § 5-304(d) ("[U]nless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given.").  The Court of Appeals of Maryland recently explained:

> By the language of the statute, the burden is on the claimant first to show "good cause."  Then, if the local government cannot "affirmatively show that its defense has been prejudiced by lack of required notice," the court "may" hear the case despite the faulty notice.  This "good cause" exception leaves the courts some discretion in enforcing the notice requirement, and allows a court, in certain circumstances, to avoid an unjust result.

*Prince George's Cnty., Md. v. Longtin*, 419 Md. 450, 467 (2011) (quoting Md. Code Ann., Cts. & Jud. Proc. § 5-304(d)).

The test for good cause is "whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances."  *Rios v. Montgomery Cnty., Md.*, 386 Md. 104, 141 (2005) (internal quotations omitted).  There are at least four

general categories of good cause that have been recognized in Maryland: "[1] excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard); [2] serious physical or mental injury and/or location out-of-state; [3] the inability to retain counsel in cases involving complex litigation; and [4] ignorance of the statutory notice requirement." *Id.*[7]

Here, Ms. Barbosa chiefly argues that good cause to waive the notice requirement exists because her failure to comply strictly with the LGTCA was "excusable." (*See* ECF No. 18, at 23). In an affidavit attached to the opposition, Ms. Barbosa's current counsel, Stephen Markey, explains that he received the police report identifying the water main break as the source of the ice on the road for the first time in September 2009. (ECF No. 18-4 ¶ 5). Shortly thereafter, Mr. Markey sent notice to WSSC regarding Ms. Barbosa's potential claim on October 2, 2009. (*Id.* ¶ 7). Ms. Barbosa argues that even though notice sent by Mr. Markey was not timely, the delay is excusable because he could not have known about the allegedly faulty water main until he received the police report. (*See* ECF No. 18, at 23).

---

[7] The court in *Rios* also noted that good cause exists "where representations made by local government representatives are misleading." *Id.* at 141-42.

There are far too many gaps, however, for good cause to be found in this case.  To begin, Mr. Markey was not Ms. Barbosa's only counsel.  Ms. Barbosa was represented by Michael Avery sometime on or before June 9, 2009, which was within the 180-day notice period of the LGTCA.  (ECF No. 18-4, at 3).[8]  On that date, Mr. Avery withdrew his representation, but Ms. Barbosa does not explain why Mr. Avery's actions (or lack thereof) prior to his withdrawal should not be imputed to her.

To that end, Ms. Barbosa also does not explain why Mr. Avery could not comply with the LGTCA.  She readily admits that the police report detailing the water main's contribution to the accident was prepared on May 5, 2009 (ECF No. 18, at 23) and that her co-plaintiffs submitted timely notices to WSSC on May 19, 2009, and July 9, 2009 (ECF No. 18-2).  Ms. Barbosa does not, however, identify any reason why her co-plaintiffs' attorneys could respond in a timely manner to the May 5, 2009, police report, but her attorney could not.[9]  Mr. Markey only

_____

[8] The accident occurred on January 20, 2009.  Therefore, the 180th day after the accident was July 19, 2009.

[9] In this respect, Ms. Barbosa's reliance on *Westfarm Associates Limited v. Washington Suburban Sanitary Commission*, 66 F.3d 669 (4th Cir. 1995), to excuse her delay in sending written notice to WSSC is misplaced.  In that case, the plaintiff "promptly investigated the source of [offending contamination] *as soon as* [it] was discovered."  *Id.* at 677 (emphasis added).  In contrast, here, there is no indication

states that Mr. Avery's file regarding her case, which Ms. Barbosa gave to Mr. Markey upon retaining him, did not contain the police report. (ECF No. 18-4 ¶¶ 2-3). But that fact only adds to Mr. Avery's apparent lack of diligence.[10] In short, Ms. Barbosa was represented by Mr. Avery *after* the May 5, 2009, police report was available and *before* the 180-day notice period expired in July 2009. Thus, Ms. Barbosa was represented by counsel during a key time when some form of notice could have — and should have — been sent to WSSC.

Lastly, Ms. Barbosa contends that her physical injuries arising from the accident should excuse the delay in sending notice to WSSC. (ECF No. 18, at 24). Ms. Barbosa again fails to address the glaring question of why Mr. Avery could not prosecute her case during her convalescence. Especially given that Ms. Barbosa could consult with Mr. Avery despite her injuries, she cannot argue that her injuries prevented her from timely notifying WSSC of her potential claims. *Cf. Madore v. Balt. Cnty., Md.*, 34 Md.App. 340, 342-43 (1976) (finding no good cause where a seriously-injured plaintiff was without counsel

that Ms. Barbosa or Mr. Avery was similarly diligent in investigating the potential causes of the accident.

[10] It is not clear that Mr. Markey himself was diligent either. Upon taking over Ms. Barbosa's case on July 9, 2009 (ECF No. 18-4 ¶ 2) — ten days before the LGTCA notice period expired — one would expect that a "reasonably prudent person" would act quickly to preserve his clients rights.

during the 180-day notice period but could have retained counsel "if it had occurred to him").

As Ms. Barbosa has not met her burden to show good cause for waiving the notice requirement of the LGTCA, the court need not address whether WSSC can show it would be prejudiced by waiving the notice requirement. *See Longtin*, 419 Md. at 467. In conclusion, without good cause to excuse her non-compliance with the LGTCA, Ms. Barbosa's claims against WSSC must be dismissed.

## B. Count One: Strict Liability

Under Count One, Plaintiffs contend that WSSC should be held strictly liable for all damages resulting from the broken water main that was under their control. Plaintiffs allege that WSSC "operated a waterworks in the Maryland suburbs of Washington, D.C., in which it collected, impounded, stored, distributed and sold water by means of a network of underground water main pipes. One such water main ran under Ridge Drive in the Bethesda area of Montgomery County, near its intersection with 64th Street." (ECF No. 1 ¶ 14).

WSSC advances two arguments for dismissing this claim. First, it argues that the maintenance of a water main is not an "abnormally dangerous activity" to which strict liability

applies.[11]   (ECF No. 13-1, at 4-7; ECF No. 22-1, at 5-7; ECF No. 27-1, at 4-7).   Second, it argues that Plaintiffs have not alleged facts showing that WSSC's action was a proximate cause of their injuries.  (ECF No. 13-1, at 7-10; ECF No. 22-1, at 7-11; ECF No. 27-1, at 7-10).   Because WSSC's first argument is dispositive of this claim, WSSC's second argument need not be addressed here.

Maryland courts have adopted the modern form of the doctrine of strict liability based on abnormally dangerous activities as set forth in the Restatement (Second) of Torts. *Gallagher v. H.V. Pierhomes, LLC*, 182 Md.App. 94, 105 (2008). According to the Restatement, "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person . . . of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Restatement (Second) of Torts § 519 (1977).  To determine what constitutes an abnormally dangerous activity, Maryland courts also look to the Restatement, using the six-factor analysis laid out in section 520.  *Gallagher*, 182 Md.App. at 105.  Those six factors are:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;

---

[11] Alternatively, WSSC notes that Plaintiffs' case does not raise a products liability issue, which Plaintiffs concede.

        (b) likelihood that the harm that results
from it will be great;
        (c) inability to eliminate the risk by the
exercise of reasonable care;
        (d) extent to which the activity is not a
matter of common usage;
        (e) inappropriateness of the activity to the
place where it is carried on; and
        (f) extent to which its value to the
community is outweighed by its dangerous
attributes.

Restatement (Second) of Torts § 520 (1977).

At this stage of the proceedings, the only available facts are those alleged in the complaint. Those allegations say nothing about any of the factors noted in the Restatement. Furthermore, no Maryland appellate decision has yet determined whether the maintenance of public water mains is an abnormally dangerous activity to which strict liability should apply.[12] As a result, Plaintiffs certainly have failed to state a claim for strict liability and that count will be dismissed. Moreover, it is unlikely that they can amend to allege sufficient facts to give rise to such liability.

---

[12] The cases that Plaintiffs cite to in support of finding that strict liability applies are inapposite. Those cases concern the storage of large amounts of water or other liquids near susceptible areas, not the transmission of water or other liquids for public use. *See, e.g.*, *Yommer v. McKenzie*, 255 Md. 220 (1969) (large gasoline tank near water well); *Balt. Breweries' Co. v. Ranstead*, 78 Md. 501 (1894) (substantial amount of privately-collected water and cleaning fluids in populated area).

First, there are Maryland court decisions in which the maintenance of public natural gas lines — a patently more hazardous substance than water — was not deemed to be an abnormally dangerous activity. *E.g.*, *Dudley v. Balt. Gas & Electric Co.*, 98 Md.App. 182, 207–08 (1993).[13]

Second, an analysis of decisions in other jurisdictions is instructive, *cf. Wade v. Danek Med., Inc.*, 182 F.3d 281, 286 (4th Cir. 1999) (looking to "the practices of other states in predicting how the Virginia Supreme Court would rule"), and reveals that the majority of courts that have confronted this question have concluded either that the maintenance of public water mains is not an abnormally dangerous activity or, more straightforwardly, that strict liability does not apply. *See, e.g.*, *State Farm Fire & Cas. Co. v. Municipality of Anchorage*, 788 P.2d 726, 729 (Alaska 1990); *John T. Arnold Assocs., Inc. v. City of Wichita*, 615 P.2d 814, 826 (Kan.Ct.App. 1980); *Jennings Buick, Inc. v. City of Cincinnati*, 384 N.E.2d 303, 308 (Ohio

---

[13] In general, absolute liability has been held not to apply to public utilities. *See, e.g.*, *Westfarm Assocs. Ltd. v. Int'l Fabricare Inst.*, 846 F.Supp. 422, 437 (D.Md. 1993) (operation of sewer system); *Voelker v. Delmarva Power & Light Co.*, 727 F.Supp. 991, 994 (D.Md. 1989) (maintenance of power lines). These cases have stressed, among other things, the "appropriate use of the land," *Westfarm Assocs. Ltd.*, 846 F.Supp. at 437, the "value to the community" and the diminished risk of harm due to regulations, *Dudley*, 98 Md.App. at 207–08, and that as a "matter of common usage," it is inappropriate to hold public utilities as insurers for the community, *Voelker,* 727 F.Supp. at 994.

1978); *McDaid v. City of Pendleton*, 478 P.2d 642, 643 (Or.Ct.App. 1970); *Midwest Oil Co. v. City of Aberdeen*, 10 N.W.2d 701, 702 (S.D. 1943); *Summit Hill Assocs. v. Knoxville Utils. Bd.*, 667 S.W.2d 91, 95 (Tenn.Ct.App. 1983); *Pac. Nw. Bell Tel. Co. v. Port of Seattle*, 491 P.2d 1037, 1040 (Wash. 1972); *Smith v. City of Morgantown*, 289 S.E.2d 223, 224-25 (W.Va. 1982). *But see Lubin v. Iowa City*, 131 N.W.2d 765, 770 (Iowa 1964); *Bridgeman-Russell Co. v. City of Duluth*, 197 N.W. 971, 972 (Minn. 1924).[14]

In terms of the majority rule, *John T. Arnold Associates, Inc.* and *Pacific Northwest Bell Telephone Co.* are especially noteworthy because those courts applied the Restatement factors, as Maryland would, in deciding that the maintenance of public water mains is not an abnormally dangerous activity. *See John T. Arnold Assocs., Inc.*, 615 P.2d at 825-26; *Pac. Nw. Bell Tel. Co.*, 491 P.2d at 1039-40. As to the minority rule, *Bridgeman-Russell Co.* likely has limited precedential value in light of the Supreme Court of Minnesota's decision in *Quigley v. Village of Hibbing*, 129 N.W.2d 765 (Minn. 1964). In *Village of Hibbing*,

---

[14] At least two other state courts have applied strict liability to situations involving broken water mains; however, those cases are not enlightening here. In *Smith v. Town of Logansport*, 395 So.2d 888 (La.Ct.App. 1981), the court applied a state statute in finding the municipality strictly liable for its faulty maintenance of a water main, and in *Bierman v. City of New York*, 302 N.Y.S.2d 696 (Civ.Ct. 1969), the lower court was considering a small claims suit.

the court restricted the holding in *Bridgeman-Russell Co.* to the unique facts of that case, noting that the water main there was so close to a reservoir that a breach in the main was tantamount to a breach in the reservoir. *Id.* at 767. That situation is not the case here.

All in all, there is good reason to conclude that the Court of Appeals of Maryland would join the majority of state courts that have already addressed this issue. Although there may be certain rare situations in which a burst water main may warrant the application of strict liability, *see, e.g.*, *Bridgeman-Russell Co.*, 197 N.W. at 972, the allegations in the complaints here do not suggest that such uncommon factors were present. As defined by the Restatement, the maintenance of public water mains is not an abnormally dangerous activity and therefore not subject to strict liability. Accordingly, Count One in all complaints will be dismissed.

**C.   Count Two:  Negligence**

In the alternative, Plaintiffs argue that WSSC was negligent in its oversight of the burst water main. To prove negligence under Maryland law, a plaintiff must show that:  (1) the defendant was under a duty to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the plaintiff suffered actual injury or loss; and (4) the loss or injury proximately resulted from the defendant's breach of the duty.

21

*Valentine v. On Target, Inc.*, 353 Md. 544, 549 (1999).   WSSC asserts that the allegations in the complaints fail to show the last element, that WSSC's action (or inaction) proximately caused Plaintiffs' injuries.   (ECF No. 13-1, at 7-10; ECF No. 22-1, at 7-11; ECF No. 27-1, at 7-10).   "To be a proximate cause for an injury, the negligence must be (1) a cause in fact, and (2) a legally cognizable cause."   *Pittway Corp. v. Collins*, 409 Md. 218, 243 (2009) (internal quotations omitted).   WSSC takes issue with both aspects of proximate cause.

Causation-in-fact refers to the requirement that the defendant's conduct actually produce an injury.   *Id.* at 244. Depending on the situation, there are two tests for determining if causation-in-fact exists:   the "but for" test and the "substantial factor" test.   *Id.*   "The 'but for' test applies in cases where only one negligent act is at issue . . . ."   *Id.* "When two or more independent negligent acts bring about an injury, . . . the substantial factor test controls.   Causation-in-fact may be found if it is 'more likely than not' that the defendant's conduct was a substantial factor in producing the plaintiff's injuries."   *Id.*

Here, WSSC argues that the "but for" test applies, but only as to the *County's* alleged negligence.   As WSSC puts it, "[t]he source of [the] water is irrelevant."   (ECF No. 13-1, at 10; ECF No. 22-1, at 10; ECF No. 27-1, at 10).   "But for the storm

sewage system failure," WSSC contends, water would never have reached the Parkway and frozen. (*Id.*). WSSC utterly misses the point, as the source of water is clearly relevant. Indeed, but for the breach in the water main, there would not have been any runaway water to freeze in the first place. In any event, as Plaintiffs correctly note, the "but for" test is not the appropriate analysis. There are multiple alleged negligent acts that potentially contributed to the vehicle accident that killed Joseph Quigley and injured Ms. Ochoa and Ms. Barbosa. Accordingly, the "substantial factor" test is the appropriate test to apply. Applied in this case, Plaintiffs have alleged sufficient facts to suggest that the breach in the water main maintained by WSSC, especially when coupled with the allegation that WSSC actually *increased* the water pressure in response to the breach, was more likely than not a contributing factor to the ultimate harms suffered by Plaintiffs.

The second requirement to show proximate cause — that the negligence is a legally cognizable cause — requires the court "to consider whether the actual harm to a litigant falls within a general field of danger that the actor should have anticipated or expected." *Pittway Corp.*, 409 Md. at 245. "The question of legal causation most often involves a determination of whether the injuries were a foreseeable result of the negligent conduct." *Id.* at 246. Here, WSSC argues that, assuming that

the burst water main was a cause-in-fact of the injuries, it was not foreseeable that the subsequent events would coalesce and result in dangerous road conditions.  (ECF No. 13-1, at 10; ECF No. 22-1, at 10-11; ECF No. 27-1, at 10).  As Plaintiffs correctly surmise (ECF No. 19, at 13; ECF No. 25-1, at 13; ECF No. 34, at 18), what WSSC is really arguing is that the County's malfunctioning storm drain was a superseding event that cut off WSSC's legal liability for the damages caused.[15]

"When multiple negligent acts or omissions are deemed a cause-in-fact of a plaintiff's injuries, the foreseeability analysis must involve an inquiry into whether a negligent defendant is relieved from liability by intervening negligent acts or omissions." *Pittway Corp.*, 409 Md. at 247.  "Liability is avoided only if the intervening negligent act or omission at issue is considered a superseding cause of the harm to the plaintiffs." *Id.* at 248.  To determine when an intervening negligent act evolves to the level of a superseding cause, the Court of Appeals of Maryland looks to sections 442 and 447 of the Restatement, summarizing those provisions as follows:  "[A]

---

[15] The County contests the proprietorship of the storm drain, stating that the United States maintained the one at issue.  (ECF No. 18, at 1-2).  Because this is a motion to dismiss, however, the allegations in the complaints must be taken as true.  *Albright*, 510 U.S. at 268.  To the extent the County's view of the facts has merit, this issue is best resolved after discovery on summary judgment.

superseding   cause   arises   primarily   when   'unusual'   and 'extraordinary'   independent   intervening   negligent   acts   occur that   could   not   have   been   anticipated   by   the   original tortfeasor."   *Id.* at   248-49.   Furthermore,   in   terms   of foreseeability,   "*both* the   foreseeability   of   the   harm   suffered   by the   plaintiffs   as   well   as   the   foreseeability   of   intervening acts"   are   considered   when   analyzing   superseding   causation.   *Id.* at 253.

Here,   WSSC   has   not   offered   any   basis   for   deciding   as   a matter   of   law   that   the   breach   in   the   storm   drain   was   so "unusual"   or   "extraordinary"   an   occurrence   so   as   to   absolve   WSSC of   any   liability.   While   the   coincidence   of   a   negligently maintained   storm   drain   near   a   burst   water   main   could   be considered   highly   unusual,   the   reverse   can   just   as   easily   be concluded.   Indeed,   it   is   hardly   a   stretch   of   the   imagination   to think   that   the   nearby   storm   drain   might   have   been   similarly breached   as   a   result   of   the   cold   weather   conditions   here   or   that it   might   generally   have   been   neglected.   Accordingly,   WSSC's motion   must   be   denied   as   to   this   count.   *See id.* ("It   is   well established   that,   'unless   the   facts   admit   of   but   one   inference   . . . the   determination   of   proximate   cause   .  .  .  is   for   the

jury.'" (quoting *Caroline v. Reicher*, 269 Md. 125, 133 (1973))).[16]

## IV. Conclusion

For the foregoing reasons, the motions to dismiss filed by Defendant Washington Suburban Sanitary Commission will be granted in part and denied in part.  A separate order will follow.

_____
          /s/
DEBORAH K. CHASANOW
United States District Judge

---

[16] Although Maryland courts have not yet faced a set of facts similar to the present one, other jurisdictions have found municipalities and their agents negligent for failing to maintain properly a water main where water escapes and freezes on a road causing vehicular accidents.  *See, e.g.*, *Stride v. Portland Water Dist.*, 178 A. 124 (Mass. 1935) (upholding jury verdict against defendant where plaintiff-driver drove over ice caused by a break in water mains and injured himself and his passenger wife); *Wagner v. Vill. Of Waterbury*, 196 A. 745 (Vt. 1938) (village held liable for wrongful death of boy hit by a car that skidded on ice that formed when water from a water main leaked onto the street); *City of Richmond v. Best*, 23 S.E.2d 224 (Va. 1942) (city held liable for personal injuries sustained by car driver when his car skidded on ice that formed from water coming from broken water main); *see also Draskowich v. City of Kan. City*, 750 P.2d 411 (Kan. 1988) (city found negligent for failing to warn drivers about ice caused by leaking water main); *Brown v. Oakland Cnty.*, 271 N.W. 550 (Mich. 1937) (county's negligence was uncontroverted in wrongful death suit where decedent-driver hit an "ice barrier" formed across a road from a leaking water main).